UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Paris Johnson, | No. 2:22-cv-00548-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Bamia 2 LLC, et al., | |
| Defendants. | |

Plaintiff Paris Johnson brought this putative wage-and-hour class action against her employer, defendants Reef Global, Inc., Reef Technologies, Inc., and Bamia 2 LLC, in Sacramento County Superior Court. Defendants timely removed to this court, invoking the court's jurisdiction under the Class Action Fairness Act (CAFA). Plaintiff has moved to remand, arguing defendants failed to establish the amount in controversy exceeds $5 million. As explained below, the court finds defendants have established it is more likely than not the amount in controversy exceeds $5 million; the court therefore **denies** plaintiff's motion.

**I.      BACKGROUND**

Plaintiff worked as a kitchen line cook for defendants. Compl. ¶ 16, Not. Removal Ex. A, ECF No. 1-3. Plaintiff sued defendants in February 2022, alleging unfair business practices and seven violations of the California Labor Code: (1) failure to pay minimum wage in violation of section 1197 and 1182.12; (2) failure to pay overtime wages in violation of sections 510 and

1

1198; (3) failure to provide meal period premiums in violation of sections 226.7 and 512(a); (4) failure to provide rest break premiums in violation of section 226.7; (5) failure to provide complete itemized wage statements in violation of section 226(a); (6) failure to timely pay wages upon termination in violation of sections 201 to 203; and (7) failure to reimburse business expenses in violation of sections 2800 and 2802. *See generally* Compl.  Plaintiff seeks to represent a class comprising current and former non-exempt California employees who worked for defendants during the four years preceding the filing of the complaint through the date of the trial.  *Id.* ¶ 40.

As noted, defendants timely removed to this court, invoking this court's jurisdiction under CAFA.  *See generally* Not. Removal, ECF No. 1.  Plaintiff moved to remand, arguing this court lacks subject matter jurisdiction because defendants have not shown that more than $5 million is in controversy.  *See generally* Mot. Remand, ECF No. 7.  The court received full briefing and submitted the matter without oral argument.  *See* Opp'n, ECF No. 8; Reply, ECF No. 9; Min. Order, ECF No. 10.

## II.   DISCUSSION

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount in controversy exceeds $5 million dollars.  *See* 28 U.S.C. § 1332(d)(2), (5).  The parties do not dispute that they are diverse or that the proposed class has at least one hundred members; the only issue before the court is whether the amount in controversy exceeds $5 million.

Because plaintiff's complaint does not quantify damages, the defendants must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  In making this showing, a

removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also id.* ("[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: assumptions."). These assumptions must reflect more than "mere speculation and conjecture," *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015), and they "need some reasonable ground underlying them," *see id.* at 1199, but they "need not be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (overturning remand order where district court held lack of evidence precluded use of assumed violation rates). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925.

The core dispute here is whether defendants have sufficiently supported the assumptions undergirding their amount-in-controversy calculation. Defendants calculate the amount in controversy in three steps. First, defendant Bamia 2's Senior Human Resources Manager – West, Amy Johnson, attests to the size of the putative class and each class member's actual hourly wage,[1] among other relevant metrics. *See generally* Johnson Decl., ECF No. 1-1. To generate these numbers, Ms. Johnson reviewed Bamia 2's records. *See id.* ¶¶ 2, 5–6. Second, defendants assume a violation rate of at least two violations per week for both the meal and rest break claims, totaling four violations per week. *Id.* ¶¶ 6–7. Defendants argue plaintiff's allegations could support a violation rate of up to 100 percent. Not. Removal ¶ 13 (citing cases). Third, combining Ms. Johnson's data and defendants' inferred violation rates, defendants calculate the amount in controversy for each of plaintiff's claims. Johnson Decl. ¶¶ 6–9; *see also* Johnson Suppl. Decl. ¶¶ 2–4, ECF No 8-1. Plaintiff does not offer alternative calculations, so the court summarizes defendants' calculations below:

/////

---

[1] Throughout her motion, plaintiff objects to defendants' use of each class member's individual hourly rate of pay, suggesting courts require an "average" hourly rate for the entire class for CAFA removal calculations and estimates. *See generally* Mot. Remand. This court sees no reason why a class-wide average hourly rate of pay is necessary where defendants have used each class member's actual wage statement data, which are inherently more precise.

| Claim | Plaintiff's Calculation | Defendants' Lowest Calculation (Notice of Removal) | Defendants' Highest Calculation (Notice of Removal) |
|---|---|---|---|
| Meal Break Violations | NA | $948,747.85 [Assuming two violations per week and 25,130 workweeks for a class of 860] | $1,423,121.78 [Assuming three violations per week and 25,130 workweeks for a class of 860] |
| Rest Break Violations | NA | $948,747.85 [Assuming two violations per week and 25,130 workweeks for a class of 860] | $1,423,121.78 [Assuming three violations per week and 25,130 workweeks for a class of 860] |
| Wage Statement Penalties | NA | $937,550.00 [9,730 pay periods for a class of 709] | $937,550.00 [9,730 pay periods for a class of 709] |
| Waiting Time Penalties | NA | $2,202,120.00 [Class of 474] | $2,202,120.00 [Class of 474] |
| **Total** | **Incomplete** | **$5,037,165.70** | **$5,985,913.56** |

Because plaintiff challenges defendants' estimates, defendants bear the burden to establish jurisdiction by a preponderance of the evidence. *Ibarra*, 775 F.3d at 1197 (emphasizing "[party] seeking removal bears the burden to show by a preponderance of the evidence that the amount in controversy exceeds $5 million") (citation omitted). Accordingly, defendants must present more than a plausible case to show it satisfies the jurisdictional prerequisite, and the absence of plaintiff's rebuttal evidence does not change that requirement. In response to plaintiff's challenge, defendants submitted a supplemental declaration from Ms. Johnson, which included additional clarification about the numbers defendants used in their calculations, *see generally* Johnson Suppl. Decl., and reaffirmed the total amount placed in controversy by plaintiff's causes of action is at least $5,037,165.70, *see id.*; Opp'n at 20.

The question then is whether defendants have shown by a preponderance of the evidence that the amount in controversy is indeed $5 million or more. In determining the appropriate calculation, the court is guided by the Ninth Circuit's recent decision in *Jauregui*, in which the court explained how to assess assumptions underlying amount-in-controversy calculations:

> Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden. But often . . . the reason a defendant's assumption is rejected is because a different, better assumption is identified. Where that's the case, the district court should consider the claim under the better assumption—not just zero-out the claim.

28 F.4th at 996. Following this directive, the court eliminates assumptions that are self-evidently unreasonable or baseless. *Id.*; *see also Ibarra*, 775 F.3d at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."). Where alternative assumptions have been offered, the court adopts the best reasonable alternative. *Jauregui*, 28 F.4th at 996. The court sets forth its application of this approach below, by claim.[2]

### A.     Meal and Rest Break Violations

Defendants initially determined that missed meal and rest breaks put a total of $1,897,495.70 in controversy. *See* Not. Removal ¶ 12. Defendants reached this figure by assuming a violation rate of 40 percent, meaning class members missed an average of two required meal breaks and two required rest breaks per workweek. *See id*. In support of this assumption, defendants point to language in plaintiff's complaint alleging putative class members were "regularly denied" legally compliant breaks and were "often" or "routinely" unable to take compliant breaks due to defendants' "uniform policies/practices." Opp'n at 13–14, 16 (citing Compl. ¶¶ 26, 28, 29, 31). Defendants cite case law supporting 40 to 60 percent violation rate estimates where a plaintiff makes broad allegations of violations. *Id.* (citing cases). Plaintiff first argues defendants offer no reliable data regarding the frequency of missed meal and rest periods, and that an assumption of four meal and rest violations per workweek is unreasonable. Mot. Remand at 9–11. Plaintiff does not offer an alternative assumption. *See generally id*. Plaintiff further argues defendants failed to limit their meal break calculations to only those non-exempt employees who were entitled to first and second meal periods, instead assuming all purported 860 non-exempt employees were entitled to the breaks. *Id.* at 10–11.

As an initial matter, the court finds defendants' original assumption—that class members missed two meal breaks and two rest breaks per week—is not facially unreasonable. Throughout her complaint, plaintiff references defendants alleged "policies," "practices," and "policy" and/or

---

[2] Plaintiff argues *Jauregui* is inapplicable because defendants have "provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim . . . ." Reply at 7 (quoting *Jauregui*, 28 F.4th at 996 (emphasis in original)). However, defendants here have provided the same summary judgment style evidence defendants offered in *Jauregui*: a declaration of a senior employee who reviewed the company's payroll data and calculated the potential value of the various claims. *See generally* Not. of Removal; *see also Jauregui*, 28 F.4th at 991.

5

1  "practice" of denying compliant breaks, among other violations.  *See generally* Compl.  Courts
2  routinely approve higher violation rates based on allegations of "policies and practices" denying
3  meal and rest breaks to class members.  *See, e.g.*, *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147,
4  1151 (S.D. Cal. 2018) (reasonable to assume putative class members missed three meal periods
5  and three rest periods per workweek where complaint "offered no guidance as to the frequency of
6  the alleged violations, only that Defendant had 'a policy and practice' of meal and rest period
7  violations"); *Sanchez v. Abbott Labs.*, No. 20-cv-01436, 2021 WL 2679057, at *4–5 (E.D. Cal.
8  June 30, 2021) (reasonable to assume putative class members missed three meal periods and two
9  rest periods per week based on complaint's allegation of "pattern and practice" of denying such
10 breaks); *Oda v. Gucci Am., Inc.*, No. 14-cv-07469, 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7,
11 2015) (reasonable to assume putative class members missed 2.5 meal periods and 2.5 rest periods
12 per week based on complaint's allegations that class members "sometimes" did not receive all
13 meal periods and defendant-employer "maintained a policy or practice" of not compensating
14 employees for missed breaks).  Similarly, because plaintiff alleges non-exempt employees
15 "regularly worked various shifts, many of which were in excess of 8.0 hours in a workday,"
16 Compl. ¶ 20, defendants could reasonably assume all putative class members were regularly
17 entitled to at least one meal break per shift.
18     Because plaintiff does not propose a better or more reasonable alternative, and defendant's
19 approach is reasonable, the court accepts defendant's original assumption that all 860 putative
20 class members missed two meal breaks and two rest breaks per week.  Using this estimate,
21 defendants calculate that plaintiff's claims for missed meal and rest breaks put $1,897,495.70 in
22 controversy.  *See* Opp'n at 14.  Defendants arrive at this figure by multiplying three numbers
23 together: 25,310 workweeks completed by class members, four meal and rest violations per week,
24 and the actual hourly rate of each of those 860 class members.  *See* Johnson Decl. ¶¶ 5–6; *see*
25 *also* Cal. Lab. Code § 226.7(c) (employer shall pay one hour's pay for each missed meal period
26 or rest break).  The court adopts this estimate.
27 /////

### B. Waiting Time and Wage Statement Penalties

In connection with plaintiff's claims for waiting time and wage statement penalties, defendants assume no terminated employee was paid in full by the thirty-first day after termination, *see* Not. Removal ¶ 12; Johnson Suppl. Decl. ¶ 4, and all pay stubs issued during the limitations period contained at least one error, *see* Not. Removal ¶ 12; Johnson Suppl. Decl. ¶ 3. Plaintiff does not propose an alternative violation rate for either claim. The court's analysis is thus limited to whether defendants' proposed assumptions are reasonable.

Defendants' proposed assumptions are reasonable. Both waiting time and wage statement penalties can be derivative of other Labor Code violations. *See Cabrera*, 2021 WL 5937585, at *10; *Nunes v. Home Depot U.S.A., Inc.*, No. 19-cv-01207, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019). The assumed frequency with which class members performed unpaid work and were denied breaks therefore logically supports defendants' assumptions here. *See, e.g.*, *Cabrera*, 2021 WL 5937585, at *10 (because court assumed "one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member[, i]t follows that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort"); *Nunes*, 2019 WL 4316903, at *3 ("Given the allegations, it is reasonable to assume the terminated class members suffered at least one violation (e.g., one missed meal or rest break) and were therefore not paid all wages owed upon termination."); *see also Jauregui*, 28 F.4th at 994 (rejecting district court's unwillingness to assume "vast majority (if not all)" terminated class members were entitled to 30 days of waiting time penalties in an analogous case). Because these two assumptions are reasonable and plaintiff offers no alternatives for comparison, the court adopts both.

In reliance on these assumptions, defendants generate their estimate for waiting time penalties—$2,202,120.00—by multiplying together three numbers: the number of class members terminated during the limitations period (474), 30 days of penalties for each terminated class member, and the average daily pay rate of each employee, which is based on each eligible employee's regular hourly pay rate. *See* Not. Removal ¶ 12; Johnson Suppl. Decl. ¶ 4; *see also* Cal. Lab. Code § 203(a) (authorizing recovery of up to thirty days' pay for failure to timely pay

final wages).  Defendants value plaintiff's claim for wage statement penalties at $937,550.00 by applying the initial penalty amount ($50) and subsequent penalty amount ($100) to each eligible putative class member's number of pay period wage statements (9,730), up to an aggregate penalty of $4,000.  *See* Opp'n at 17; Johnson Suppl. Decl. ¶ 3 (noting 709 employees with at least one pay period during applicable time period); *see also* Cal. Lab. Code 226(e)(1) (entitling employees to recover $50 for first pay period in which they receive a noncompliant wage statement and $100 for each subsequent pay period in which they receive a noncompliant wage statement).  The court adopts both figures.

The following chart reviews and totals the minimum amount in controversy the court adopts, by claim, as discussed above:

| Claim | Amount in Controversy |
|---|---|
| Meal and Rest Breaks | $1,897,495.70 |
| Wage Statements | $937,550.00 |
| Waiting Time Penalties | $2,202,120.00 |
| **Total** | **$5,037,165.70** |

Without needing to reach plaintiff's remaining claims for attorneys' fees, unreimbursed business expenses, and failure to timely pay minimum wage or overtime, the court finds defendants have shown it is more likely than not that more than $5 million dollars is in controversy here.

### III.  CONCLUSION

Plaintiff's motion to remand is **denied**.

This order resolves ECF No. 7.

IT IS SO ORDERED.

DATED:  July 22, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE